UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Robert Jones
Reginal Washington, Plaintiffs
Those Similarly Situated

-against-

AMENDED COMPLAINT
42 U.S.C. §§ 1983
JURY TRIAL DEMANEDE
2015-cv-4753(KAM)(LB)

Bill De-blasio "Mayor" County Executive

City of New York, Municipal Corporation;

Jason Turner, Commissioner for the City of

New York, Human Resources Administration "HRA"

Jo-Ann B. Barhart, Commissioner for the City of

New York, Social Security Income Administration

"SSI"; Alphonso Jackson, Secretary of Housing and

Urban Development "HUD"; Vicki Breen, Commissioner

of Housing Preservation and Development "HPD";

Gary D. Rodney, President Housing Development Co. "HDC";

Maritza Silva Farrell Affordable Rent Co.; John/Jane Doe

Commissioner City of New York, Department of Social Services

"DSS"; Rick Davis Rockaway House LLC, Anthorney Doe Rockaway House LLC

Defendants in therir Official and Personal Capacity et al.

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 04 2016 ★
BROOKLYN OFFICE

Plaintiffs Robert Jones and Reginal Washington Pro-se for this Class Action Complaint Allege as Follows:

## AMENDED COMPLAINT

1). The Jurisdiction of this Court Eastern District of New York, is Invoked pursuant to title 28 U.S.C. §§ 1331, 1332 and 1343 (3). Venue is proper with the Eastern District pursuant to 28 U.S.C. §§ 1391 (b)(1) and 1391 (c)(2).

2). This being an action in equity authorized by law to be brought to redress the deprivation under Color of State Law Statute, Ordinance, Regulation.

3). Custom, or Usage of a Right, Privilege, or Immunity Secured by the Constitution and Laws of the United States or by acts of congress.

4). Providing for Equal Rights of Citizens, namely the Rights of Plaintiffs Robert Jones and Reginal Washington along with those Similarly Situated Citizens of New York City and the United States.

5). This is an action to recover Injunctive and Declaratory relief pursuant to title 28 U.S.C. §§ 2201 for the purpose of determining. a question in actual controversy between parties.

6). the Regulation, Policy, Custom, Usage, Conduct, and Practice of defendants Bill De-blasio "Mayor" Jason Turner, Commissioner, Human Resources Administration "HRA", Jo-Ann B. Barhart Commissioner Social Security Income "SSI".

7). Alphonso Jackson, Secretory of Housing and Urban Development "HUD" Vicki Breen, Commissioner of Housing Preservation and Development "HPD",

8). John/Jane Doe, Commissioner Department of Social Service, "DSS" Rick Davis, Rockaway Houes LLC; Maritza Silva Farrell Affordable For All Housing Corporation et al, et seq.

9). In refusing to lease to plaintiffs Real Property without Discrimination because of Race, Color, or Economic Statute as secured

By the Fifth and Fourteenth Amendment of the United States Constitution

10). Pursuant to title 42 U.S.C. §§ 1981, 1982 and 1983 along with other qualified African American Applicants Similarly Situated.

## FACTS

11). On January 16, 2015. and all other times relevant herein defendants as held in ¶¶ 1-10 did knowingly with a willful intent to discriminate; obstruct, or delay plaintiffs Due Process Rights to access all relevant Federally Funded Programs, Benefits.

12). And services including but not limited to Public Health and Welfair chapter 119, under MCkinney Vento Homeless Assistance Act. title 42 U.S.C. §§ 11301, 11381, and 11389, also see §§ 24 CFR, Former §§ 960, 212 213 (a)(2).

13). In accordance with Title 42 U.S.C. §§ 3601 and 3608 (e) of the Fair Housing Act, 42 U.S.C. §§ 1401 of the United States Housing Act. for which defendants by way of a Policy, Procedure, Rule, or Regulation. discriminated against plaintiffs resulting in deprivation.

14). And receipt of all relevant Public Accommodation, Programs and Services entitled to others similarly situated in violation. of Americans with Disabilities Act 42 U.S.C §§ 12101-12134, and 12134-12165 "Reasonable Accommodation".

15). On January 15, 2015. Plaintiff Robert Jones was released from the State of New York, Department of Corrections "DOCCS" to the custody of the Division of State Parole.

16). Plaintiff was directed by Parole to the Narco-Freedom Three Quarter House temparary shelter located at 367 Howard Ave Bklyn New York 11233.

17). Such placement by Parole did violate relevant Policy and Procedure for prefered Public Housing, Supportive Housing Pursuant to title 42 U.S.C. §§ 11301-11389 et al, et seq.

18). Pl+aintiff Robert Jones after being informed by Narco-Freedom. staff that the Narco-freedom Program was under Criminal and Federal Investigation for Tax Fraud, Medicaid Kick Backs and Illegal Misuse of Government Funding for which the Narco-freedom owners.

19). And directors Alan Brand and His Son Jason Brand were under arrest, plaintiff fearing he would be the subject of illegal misconduct, also having a Federal Civil case pending before the Honorable Judge Katherine P. Failla USDJ in the matter of Jones v Meehan 2014-cv-06402 (KPF). see News Paper Article Exhibit "A".

20). On January 17, 2015. Plaintiff sought more suitable Housing and Programs Services with the Rockaway House LLC Three-Quarter Shelter/Program House located at 949 Hendrix Street in the East New York section of Bklyn.

21). On the above date plaintiff meet with Rockaway House Manager Rick Davis and was presented with a dozen or more forms which Mr. Jones signed, said forms advised plaintiff that he was being placed in a Program House.

22). House rules included a list of 10 rules prefaced by a declaration that "I understand that I am Living in a Temparary Shelter

Approved by Parole, this is not my permanent residence, rules also included no Visitors, Daily Curfew, Prohibitation on Drug and Alcohol usage.

23). Daily out patient Substance Abuse Treatment with the Network Services Rehabilitation Center, Random Urine Test, Mental Health Care and Therapy to treat plaintiff chronic Posttraumatic Stress Disorder, Anxiety, Depression, Anti-Social Personality Disorder.

24). Plaintiff during visits with the Network Services out patient clinic was prescribed anti-psychotic medication "Respirdol" "RDSD-1035, Prozac 80mgs, Aterracz 100mgs for Sleep Disorder.

25). Plaintiff during all times relevant sought further clinical diagnosis and testing pursuant to title 42 U.S.C. §§ 405 (g) in accordance with 20 CFR §§ 404.1512 (e); 42 U.S.C. §§ 423 mental health evaluation under residual functional capacity see 20 CFR § § 404.1520.

26). Plaintiff Robert Jones maintains that during all times relevant herein he was denied such services whereby according to Rockaway House LLC rules that failure to comply with house rules and failure to Substance Abuse Treatment would result in discharge

27). From the program because both Network Services and the Rockaway House were directly affillated and in receipt of Federal Funding and Kickbacks from Medicaid.

28). Plaintiff while housed at the Rockaway House LLC, 949 Hendrix Street location was assigned to a far right bottom bunk

In the right room on the first floor for which he was also assigned closet space.

29). Rockaway House did not provide this residance to the plaintiff for free instead Hendrix Street Rockaway House charged $ 215.00 dollars per month, coincidentally equal to the maximum sum the the City of New York pays as shelter allowance for a single adult.

30). Payment to the Rockaway House 949 Hendrix Street location by the Human Resources Administration "HRA" through its Department of Social Services "DSS" were made on plaintiffs behalf based on his disenfranchised economic past "Homelessness".

31). On March 12, 2015. Plaintiff while at the Rockaway House LLC. 949 Hendrix Street location was asleep in his assigned bottom bunk at 5:30 in the morning awaken by Rick Davis House Manager and told the police were there and that he plaintiff was required to exit the premise.

32). Plaintiff upon seeing the Police Officer feared that if he did not exit the premise he would be beated or arrested for violation of Rockaway House Rules, plaintiff was then hand cuffed and forced physically off the premise and placed into an unmarked police car.

33). Plaintiff was transported by police car to the 71st Pct and interrogated for over ten hours before being placed under arrest for a Burglary which was allege to have occurred on or about March 8, 2015. at 1725 President Street in the County of Kings.

34). It is unclear as to how police arrived at the 949 Hendrix Street location, or how Police Detective Steal # 4315 identified Plaintiff as the suspect while at his home days before his arrest on March 10,2015.

35). On March 12, 2015. Plaintiff unable to post bail was transfered to the custody of the City of New York, Department of Corrections "DOC".

36). On May 21, 2015. Plaintiff received notice that he had been evicted from the Rockaway House LLC, 949 Hendrix Street location for failure to pay rent and non-substance Abuse Treatment attendance.

37). Plaintiff maintains that the acts of defendants Rockaway House LLC by their wrongful eviction of plaintiff from the 949 location known as a Program House without a formal hearing violated his rights to access Substance Abuse Rehabilitation and Mental Health Care.

38). Pursuant to Americans with Disabilities Act "ADA" title 42 U.S.C. §§ 12101-12134, Rehabilitation Act "RA" title 29 U.S.C. §§ 504, 701 and 794. and 42 U.S.C. §§ 1981, 1982, and 1983.

39). Plaintiff also as a direct result suffered deprivation of personal property namely Apple Lap Top Computer, Brown Shearlin Jacket, Black Shearlin Jacket, Three Cell Phones, JVC Camcorder, Nikcon 35mm Camera, Clothing, Boots, Shrits, Paints, Legal Papers, et al, et seq.

40). The above items were not stored or maintained by house manager Rick Davis and removed from said location without consent in violation of New York City Administrative Code §§ 26-521 (a).

41). Which provides: That it is unlawful for anyone to evict or attempt to evict an occupant of a dwelling unit or room who has lawfully occupied the unit or room for thirty consecutive days or more. see RPAPL §§ 711 code §§ 26-521 (a).

42). Plaintiff invokes title 28 U.S.C. §§ 2201 for the purpose of determining a question in actual controversy between the parties that is wether the Regulation, Policy, Custom, Usage, Conduct and Practice of Defendants violate plaintiff Due Process Rights.

43). As are secured by the Constitution and Laws of the United States, particlarly the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1981, 1982 and 1983.

44). Plaintiff maintains that while housed at the Rockaway House LLC 949 Hendrix Street location he suffered special injuries, pain, discomfront, swelling of the hands, feet, neck, back, and face due to prolong and continues exposure to Bed Bug infestation.

45). Toxic Black Mold, Sewage Flooding in the basement, High Voltage Wires exposed from the non-covered electical service panel. in violation of Quality Housing and Work Responsibility Act title 42 U.S.C. §§ 1437 (c).

46). Plaintiff seeks relocation assistance and benefits pursuant to Uniform Relocation Assistance and Real Property Act

Pursuant to title 42 U.S.C. §§ 4601, Whereby Congress expicitly authorized relief under §§ 1983. As part of Quality Housing and Work Responsibility Act of 1988. 42 U.S.C. §§ 1437 (c)(1), (i)(4) (b).

47). This being an action in equity authorized by law to be brought to redress the deprivation under color of State law Statute, Ordinance, Regulation, Custom, or Usage of a Right, Privilege, or Immunity secured by the Constitution and law of the United States and Acts of Congress.

48). Providing for equal rights of citizens namely Robert Jones and Reginal Washington, the right to acquire and lease real property without discrimination based on Race, Color, or Economic. Statute as secured by the Fifth and Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1981, 1982 and 1983.

49). This is a proceeding for an Injunction and a order of Declaratory Judgment pursaunt to 28 U.S.C. §§ 2201 for the purpose of determining a question in actual controversy between the parties.

50). That is whether the Regulation, Policy, Custom, Usage, Conduct and Practice of Defendants Bill De-blasio et al, et seq in refusing to lease plaintiff and those similarly situated who are qualified to be in receipt of Federally Funded Programs and Services.

51). Including but not limited to public access Housing in accordance with Public Health and Welfair Chapter 119, Mckinney Vento Homeless Assistance Act 42 U.S.C. §§ 11301, 11381 and 11389,

§§ 24 CFR former §§ 960, 212-213 (a)(2), and United Statse Housing Act. title 42 U.S.C. §§ 1401.

52). For which the plaintiffs were denied based on and because of their Race, Color, and Economic statute by defendants in accordance with a strict policy of racial and economic segregation.

53). The want of certain units of housing under the administration, Control and Management of Defendants Bill De-blasio, Mayor. Vicki Breen, Commissioner of Housing Preservation and Development. "HPD".

54). Gary D. Rodney, President of Housing Development "HPC" Alphonso Jackson, Secretary of Housing and Urban Development "HUD" Maritza Silva Farrell Affordable Housing for All Co, Rubin Wolf Residence and Linden Plaza "Michell-Lama Rent/low income".

55). Defendants are in violation of the Constitution and Laws of the United States particularly the Fifth and Fourteenth Amendment to the United States Constitution 42 U.S.C. §§ 1981, 1982 and 1983.

56). Defendants as held in ¶¶ 52-55 in a resent report has earmarked 10% of the Affordable for All Housing Units to be preserved for low-income homeless person in accordance with Land Master v. Montgomery

57). Plaintiff maintains according to information and belief that Rubin Wolf Residence 3629 White Plains Rd and the Linden Plaza 675 Lincoln Avenue Bklyn Mitchell-Lama Rentals Low-income Housing receives tax credits.

58). And are not in compliance with Land Master Montgomery I, LLC v. Town of Montgomery. Sup. Ct Orange Co. Sept 18, 2004. Index No. 8125/2004.

59). Accordingly upon information and belief, defendants Bill De-blasio "Mayor" has entered into a contractual agreement with defendants Vicki Breen Commissioner "HPD", Gray D. Rodney "HDC", Alphonso Jackson "HUD".

60). To provide municipal land for the development of Affordable Housing, whereby local legislation via Mayor De-blasio Policy, Procedure, Rules, Regulation, or Practice enable municipalities. to provide Real Property tax exemption.

61). When the Real Property is used for Affordable Housing such contractual agreement has been breached by the developers of Rubin Wolf and Mitchell-Lamam Houses to ensure that 10% percent of its Housing be provided to those in want of permanent low-rent.

62). Applicants both Rubin Wolf and Mitchell-Lama Housing Co. have in a recent public record admitted only 5% percent of its housing has been preserved for mobility impaired and 2% percent for the Hearing. impaired.

63). According to information and belief the preference for precentage of units goes to Residents of the Bronx CB 12 (50%) and 5% percent to municipal employees with 0% percent for applicants with an annual household earning of lest then $ 28,492.

64). Whom are not the 10% percent homeless person and families agreed on by developers which qualifies them to the agreed property tax exemption

Under Land Master Montgomery I, LLC v. Town of Montgomery. Sup. Ct. Orange Co. Sept 18, 2004 index No. 8125/2004.

PARTIES

65). Plaintiff Robert Jones and Reginal Washington are African American Citizens of the United States and that of the State of New York, Residents of the City of New York,

66). Each is the head of a family in serious need of Housing as contemplated by the United States Housing Act title 42 U.S.C. §§ 1401. Fair Housing Act, 42 U.S.C. §§ 3601 and 3608

67). Defendants Bill De-blasio is "Mayor" and Chief Executive Officer for the City of New York, Municipal Corporation in that Capacity he is the County Executive Administrator of local Government.

68). Defendants Jason Turner, was at all times relevant herein, Commissioner for the City of New York, Human Resources Administration "HRA" in that capacity he is the Chief Executive Officer and Head of that administrative Branch of Government.

69). Defendants Jo-Ann B. Barhart, was at all times relevant herein, Commissioner for the City of New York, Social Security Income, Administration "SSI" in that capacity she is the Chief Executive Officer and Head of that adminisrtaive Branch of Government.

70). Defendants Alphonso Jackson, was at all times relevant herein Secretary of Housing and Urban Development "HUD" in that capacity he is the Chief Executive Officer and Head of that administr-ative. Branch of Government.

71). Defendants Maritza Silva Farrell, was at all times relevant herein, Executive Director and Spokes Person for the Real Affordability of All Housing Corporation, under Contract with the City of New York, in that capacity she was the chief executive Housing Adminisrative Officer.

72). Defendants Vicki Breen, was at all times relevant herein, Commissioner and chief Executive Director for the Housing Preservation and Development "HPD" in that capacity she is the Administrative Officer for Acqusition, Construction and Opreation of Housing Facilities in the City of New York.

73). Gary D. Rodney, was at all times relevant herein, President and Chief Executive Director for the Housing Development Corporation "HDC" in that capacity he is the Administrative Head for the Affordable Rent Co.

74). Defendants John/Jane Doe, was at all times relevant herein, Commissioner for the City of New York, Department of Social Services "DSS" in that capacity she/he is the Chief Executive Officer and Administrative Head of Opreations.

75). Defendants Rick Davis, was at all times relevant herein Management and Resources Administrative Officer for the Rockaway House LLC. Hendrix Street 949 location in that capacity he is responsible for the day to day opreation of said three quarter house.

76). Defendants as held in ¶¶ 1-10, 10-20, 20-30, 30-40, 40-50, 50-60, 60-70, 70-75 and 76 are authorized and organized under the laws of the State of New York, Constitution Article 1 §§ 6 and 12, United

United States Constitutional Amendments Fourteenth and Fifth pursuant to title 42 U.S.C. §§ 1981, 1982 and 1983.

77). United States Housing Act 42 U.S.C. §§ 1401 to Adminisrate the low-rent Housing Program of the United States Government as provided by title 42 U.S.C. §§ 1401.

78). Defendants as held in ¶¶ 1-77 and 78 did during all times relevant enterred into several contacts with the City of New York, Municipal Corporation to provide low-rent housing resltiing Constrction.

79). Maintenance and Operation of Permanent Low-rent Housing Projects see Exhibit "A" News Paper Article "Rubin Wolf Co" "Mitchell-Lama Housing Co".

80). Plaintiff maintains that pursuant to title II of the Americans with Disabilities Act "ADA" 42 U.S.C. §§ 12101-12134 and 12140. Which requires Federally Funded Programs, Benefits and Services under Reasonable Accommondation be made available.

81). Plaintiffs and those Similarly Situated who qualify for such program assistance without discrimination in the receipt there of the want of Reasonable Accommondation include that held in title 42 U.S.C. §§ 1395x(e).

82). Theapeutic and Rehabilitational Services Outpatient Substance Abuse Treatment, Mental Health Services, and Housing pursuant to Fair Housing Act 42 U.S.C. §§ 3601 and 3608 (e)(5), Homeless Assistance Act 42 U.S.C. §§ 11301, 11381 and 11389.

## JURISDICTION

83). Plaintiff seeks Jurisdiction of this Court Eastern District of New York, pursuant to title 28 U.S.C. §§ 1331 and 1343 as this Court has subject matter Jurisdiction over plaintiff State Law Claims.

84). Pendent Jurisdiction is sought pursuant to title 28 U.S.C. §§ 1332 as the amount in controversy exceeds the sum of $ 75.000.00 dollars.

## VENUE

85). Venue is proper with the Eastern District of New York. pursuant to title 28 U.S.C. §§ 1391 (b)(1) as it is the place of Employment for all defendants and their place of residence.

86). Venue of this Court Eastern District of New York is proper as a substantial part of the events or acts of omission giving rise to the claims occurred in the Eastern District, pursuant to title 28 U.S.C. §§ 1391 (c)(2).

87). And shall be deemded to reside in any Judicial District which such defendants are subjected to this Court personal Jurisdiction with respect to the civil action in question pursuant to 28 U.S.C. §§ 1391 (c)(2).

## NOTICE OF CLAIM

88). On July 28, 2015. Plaintiff Robert Jones did effectively within 90 days of the events allege by this complaint file with Scott M. Stringer, City of New York Comptrollers Office a Certified Mail Receipt # 7003 0500 003 0534 1182 timely Notice

89). On July 28, 2015. Plaintiff also effectively within 90 days of the events allege by this complaint filed with Zachary W. Carter, City of New York, Corporation Counsel a Certified Mail Receipt # 7003 0500 0003 0532 9975. timely Notice of Claim pursuant to Municipal Law §§ 50 (e).

90). At lease one year and 90 days has elaspe since the events alleged by this complaint has occurred, plaintiff has within 90 days as required by Municipal Law §§ 50 (e) effectively served Notice on all parties concerned.

AS AND FOR THE FIRST CAUSE OF
ACTION AGAINST DEFENDANTS
BILL DE-BLASIO "MAYOR";
JASON TURNER COMMISSIONER "HRA"
JO-ANN B. BARHART COMMISSIONER "SSI"
ALPHONSO JACKSON, SECRETARY "HUD"
MARITZA SILVA FARRELL, REAL AFFORD-
ABILITY. FOR ALL HOUSING Co.
VICKI BREEN COMMISSIONER "HPD"
GARY D. RODNEY, PRESIDENT "HDC"
JOHN/JANE DOE COMMISSIONER "DSS"
RICK DAVIS ROCKAWAY HOUSE LLC. et al.

91). Plaintiff allege and re-allege the allegations contained in ¶¶ 1-10, 10-20, 20-30, 30-40, 40-50, 50-60, 60-70, 70-80, 80-90, and 91. with the same force and effect as though set forth herein fully and at length.

92). Plaintiff Robert Jones and Reginal Washington are Adult Citizens of the United States, and residents of the State of New York, at all times relevant herein Mr. Jones was a legal occupant of the Rockaway House LLC, Three Quarter House, 949 Hendrix

Street in the East New york section of bklyn.

93). That according to information and belief defendants Bill De-blasio "Mayor"; Jason Turner Commissioner City of New York Human Resources Administration "HRA"; Jo-Ann B. Barhart Commissioner City of new York Social Security Income Administration "SSI".

94). John/Jane Doe Commissioner City of New York, Department of Social Services "DSS" and Rick Davis Rockaway House LLC did during all times relevant herein.

95). On January 27, 2012. and March 12, 2015. Knowingly Willfully and Wrongfully evicted plaintiff Robert Jones from the Rockaway House LLC three quarter house, while failing to renew plaintiff lease or affording him timely notice and denied him an.

96). Impartial hearing on the facts allege as the basis for the termination in violation of his Due Process Clause of the Fifth Amendment United States Constitution.

97). Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Due Process Clause of Article 1 §§ 6 New York State Constitution for which both Preliminary and Injunctive Relief are being sought pursaunt to title 28 U.S.C. § § 2201.

98). Defendants Rick Davis Rockaway House LLC, Jason Turner Commissioner "HRA", John/Jane Doe Commissioner "DSS" by and through their depriving plaintiff a fair hearing on the subject of eviction violated Aministrative Code §§ 26-521.

99). Which provides that it is unlawful for any one to evict or attept to evict a lawful occupant of a dwelling/room or unit who has lawfully occupied said dwelling for thirty consecutive days or more pursuant to RPAPL §§ 711 Code 26-521.

100). Plaintiff as a direct result of defendants wrongful eviction without Due Process of Law subject him to special injuries and deprivation of continued want of Mental Health and Substance Abuse care in violation of title 42 U.S.C. §§ 1913 (c)(1).

101). Plaintiff maintains that loss of three quarter housing due to eviction deprived him of placement with the "Network Services" a Mental Health and Drug Treatment Program directly connected to the Rockaway House LLC.

102). Plaintiff also suffered deprivation and lost personal property namely : Apple Lap Top Computer, JVC Camcorder, Nikcon 35mm Camer, three Cell Phones, Brown Shearlin Jacket, Black Shearlin Water Proof Jacket, including other Jackets, Paints, Shirts, Boots, Legal Document, Medical Records et al, et seq.

103). Plaintiff maintains that while at the Rockaway - House LLC. 949 Hendrix Street location which is uninhabitable and in violation of numerous... Health and Safety Codes, including but not limited to Bed Bug Infestation, Toxic Black Mold, High Voltage Wires Exposed in the basement activities area/main service panel in violation of Quality Housing and Work Responsibility Act 42 U.S.C. §§ 1437.

104). Plaintiff as a direct and approximate result of defendants months of unlawfully subjecting plaintiff to Bed Bugs and their damaging effects sufferred Swelling, Bruises, Abrasions, Pain, and Discomfort of the Face, Neck, Back, Shoulders, Hands and Legs.

105). Deep mental and emotional Anguish, Fear, Fright, Horror, Dread, Shock, and Shuddering with Terror, Causing Sleep Deprivation and Greif.

106). Plaintiff maintains that becuse he was under Parole Supervision and released to live at the Rockaway House Three Quarter Shelter under Executive Law §§ 259(i).

107). Conditions of Parole, Rule Number 4 requires that any unauthorized change in residence may result in revocation of the terms and conditions of release, because of plaintiffs lack of family he was forced to live under such deplorable unhumane condition as held in ¶¶ 104-106.

108). The Eighth Amendment of the United States Constitution Prohibits acts of Cruel and Unusual Punishment as dose the New York State Constitution Article 1 §§ 11 and 12.

109). Defendants Rick Davis and Supervisor Anthorney Doe, of the Rockaway House LLC. did by and through their Policy, Procedure, Rules, Regulations or Customs which illegally evicts its occupants.

110). While depriving them of a procedure and hearing in violation of City of New York Administrative Code §§ 26-521 (a) secured as a right by plaintiff, defendants did effectively execute

Said eviction by way of Intemidation, Threates, and wrong-full with holding of property for the payment of rent not payed after eviction

111). In violation of title 18 U.S.C. §§ 241 and 242 which provides protection against those whom conspire to secretly with criminal intent to injure, oppress, threaten or intemidate any person.

112). In any State, Territory, Common Wealth, Possession, or District in the free exercise or enjoyment of any Rights, Privilage or Due Process, secured to him by the Constitution or Laws of the United States.

113). Shall be fined under this title 18 U.S.C. §§ 241 and 242. or imprisoned not more than Ten Years or both. see United States v. Lannacone, 918 f.2d 319, 1910 or 1990 U.S. App. LEXIS 16917 (1990) also see United States v. Guest. 383 U.S. 745, 16 LEd.2d 239, 86 S.Ct 1170.

114). On January 27, 2012. Plaintiff was while subjected the same unlawful eviction procedure practiced at another Rockaway House LLC, 571 Glenmore Ave. during which House Manager Anthorney Doe after plaintiff eviction from said location wrongfully deprived.

115). Mr. Robert Jones, of numerous items of personal property namely Three Jackets, Paints, Hats, Shrits, Money, and other personal effects, never recovred in its First violation of Administrative Code §§ 711 Code 26-521 (a).

AS AND FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS BILL DE-BLASIO "MAYOR" JASON TURNER, COMMISSIONER "HRA" JO-ANN B. BARHART, COMMISSIONER "SSI" ALPHONSO JACKSON SECRETORY "HUD" VICKI BREEN. COMMISSIONER "HPD" GARY D. RODNEY, PRESIDENT "HDC" MARITZA SILVA-FARRELL, AFFORDABLE RENT Co, JOHN/JANE DOE, COMMISSIONER "DSS", RICK DAVIS ROCKAWAY HOUSE LLC ANTHORNEY DOE ROCKAWAY HOUSE LLC, ET AL.

116). Plaintiff re-allege the allegation contained in ¶¶ 1-10, 10-20, 20-30, 30-40, 40-50, 50-60, 60-70, 70-80, 80-90, 90-100 100-110, 110-115 and 116. with the same forec and effect as though set forth herein fully and at length.

117). This being an action in equity authorized by law to be brought to redress the deprivation under Color of State law, Statute, Ordinance, Regulation, Custom, or Usage of a Right, Privilege, or Immunity Secured by the Constitution and laws of the United States, and acts of congress.

118). Providing for equal rights of Citizens namely Robert Jones. and Reginal Washington, the right to acquire and lease real property without discrimination based on Race, Color, or Economic statute as secured by the Fifth and Fourteenth Amendment United States Constitution and 42 U.S.C. §§ 1981, 1982, and 1983.

119). This is a proceeding for an Injunction and a Declaratory. Judgment pursuant to title 28 U.S.C. §§ 2201 for the purpose of determining a question in actual controversy between the parties that is whether the Requlation, Policy, Customs, Usage, Conduct and Practice of Defendants.

120). Bill De-blasio, Alphonso Jackson "HUD" Vicki Breen "HPD", Gary D. Rodney "HDC", Jason Turner "HRA" et al, et seq in refusing. Plaintiff Robert Jones and others equalified to be in receipt

Of Reasonable Accommodation pursuant to Americans with Disabilitie Act "ADA" title 42 U.S.C. §§ 12101-12134.

121). Rehabilitation Act "RA" title 29 U.S.C. §§ 504, 701, and 794. in accordance with Public Health and Welfair Chapter 119, Mckinney Vento Homeless Assistance Act 42 U.S.C. §§ 11301, 11381,and 11389, §§ 24 CFR former §§ 960, 212-213 (a)(2).

122). Fair Housing Act title 42 U.S.C. §§ 3601 and 3608 (e) (5). And United States Housing Act title 42 U.S.C. §§ 1401. for which plaintiff was denied based on and because of their Race, Color, and Economic statute.

123). Defendants have in accordance with a strict Policy of Raical and Economic segregation, which deprived plaintiffs and those similarly situated access to certain units of housing under the administration. Control and Management of defendants.

124). Vicki Breen Commissioner "HPD", Gary D. Rodney President. "HDC", and Alphonso Jackson "HUD" is a violation of the Constitution. and Laws of the United States title 42 U.S.C. §§ 1981, 1982 and 1983.

125). This a Class Action pursuant to Rule 23 (a)(b) of the Federal Rules of Civil Procedure Fed.R.civ.P. brought by plaintiff on behalf of themselves and on behalf of others similarly situated namely those African American Citizens of the United States and Residents of the State of New York.

126). Those Homeless persons who are in need of housing and whom are eligible for permanent low-rent housing as contemplated by United States Housing Act 42 U.S.C. §§ 1401.

127). As amended, and other applicable laws, and who are similarly denied admission, solely because of their Race, Color, or Economic Statute in accordance with a Strict Policy of Racial Segregation. To some of the Housing Urban Development under construction.

128). And Projects maintained, operated and controlled by defendants Alphonso Jackson, Secretory of Housing and Urban Development "HUD", Vicki Breen, Commissioner of Housing Preservation and Development "HPD", and Gary D. Rodney, President of Housing Development Co. "HDC".

129). Affordable Housing for Rent 86 Newly Constructed Units at 365 Bond Street, Linden Plaza 675 Lincoln Avenue, Bklyn, New York. Mitchell-Lama Rent/Low Income Housing whom are in receipt of Tax Credit pursuant to §§ 421-a.

130). According to information and belief plaintiffs are low income persons, the intended beneficiary of "Mitchell-Lama" Housing pursuant to Article II of the Private Housing Finance Law of New York, and cannot consistent with the requirements of due process be deprived of tenancy at 365 Bond Street, et al, et seq.

131). Linden Plaza 675 Lincoln Avenue "Mitchell-Lama" Housing for which were constructed through the Low-Income Affordable Marketplace Program "LAMP" of the New York City Housing Development Corporation and the Low Income Rental Program "LIRP" of the New York

City Department of Housing Preservation and Development.

132). According to information and belief Steve Banks Commissioner of the Department of Homeless Services did On January 3, 2016. issue public notice that $ 1 Billion Dallors have been allocated over the next four years.

133). To provide Housing for the Homeless in New York City. accordingly, Over 38,000 people housed in homeless shelters, and 15,000. more are in need of permanent housing.

134). While administratively failing to address the cause of Homelessness and Provide a working solution to this crisis according to infomation and belief the City of New York, via Steve Banks, Commissioner for Homeless Services spent $ 962 Million Dallors a year on shelter system.

135). Said Policy issued by the Mayors Office admits renting private apartments to over 3,000 homeless families at a cost of $ 2,500.00 dallors a month per unit, said apartments are dumps and the worst combination of expensive housing, bad conditions and poor acess to service that homeless families need.

136). The Commissioner's power to appoint, remove and replace members of the board of directors; requirements for five percent capital investment by private interests; a declaration of corporation dedication "to serve a public purpose and that it shall be and remain subject to the supervision and control.

137). By the commissioner; and a provision barring the sale, transfer, encumbrance or assignment of real property except as approved by the Commissioner or the Supervising angency.

Pursuant to Housing Finance Law §§ 13.

138). Upon information and belief, the involvement of Defendants Bill De-Blasio "Mayor" et al, et seq. with the New York State Government pursuant to the Private Housing Finance Law is pervasive and long lasting, New York State's control make the continued direction.

139). To Supervision, Regulation and Control the acts of defendants in the establishment, Operation and Management of the Affordable Housing for All Co. Rubin Wolf Residence and Linden Plaza "Michell-Lama Rent" Housing Corporation.

140). Plaintiffs Robert Jones and Reginal Washington, and all Similarly Situated, presently, and at all times relevant herein mentioned, were and are persons of low income, qualifying under New York State Regulation for Occupancy at the.

141). Affordable Housing for All, Rubin Wolf Residence, and the Linden Plaza "Michell-Lamam Housing Projects/Apartments for which they have been denied placement due solely to a Policy Rule, Regulation or Custom which discrimnation based on Race, Color, or Economic Statutes.

142). Defedandant Bill De-blasio "Mayor", Alphonso Jackson Secretary of Housing and Urban Development "HUD", Vicki Breen, Commissioner. of Housing Preservation and Development "HPD", Gary D. Rodney President Housing Development Corporation "HDC", Maritza Silva Farrell Affordable Housing for All Corporation, Rick Davis Rockaway House LLC, Three Quarter House, Anthorney Doe Rockaway House LLC.

143). Are as Corporations authorized under State and Federal Law, for the purpose of administering a Program designed to Purchase, Acquisition, Construction, Maintenance and Operation of Housing Facilities.

144). To eliminate housing conditions which are detrimenta to public Peace, Health, Morals, and Welfare of the City of New York Whereby, Federal funds are provided for housing owned, operated and Administered by local Housing Authorities or Commissioner for low-rent housing use.

145). As contemplated by the United States Housing Act 42 U.S.C. §§ 1401 et al. and other applicable Laws, defendants Commissioner Vicki Breen "HPD", have enable defendants Grary D. Rodn "HDC" Maritza Silva Farrell Affordable Housing for All Co.

146). And City of New York, Municipal Corporation to secure grants and loans from the U.S. Government for the purpose of providi Permanent Low-rent Housing for families of low income.

147). Pursuant to Public Access Housing in accordance with Public Health and Welfair Chapter 119 McKinney Vento Homeless Assist-ance. Act 42 U.S.C.§§ 11301, 11381 and 11389.

148). Plaintiff Robert Jones and Reginal Washington and all others Similarly Situated have been effectively denied access to all relevant housing programs solely because of their Race, Color, and Economic Statutes.

149). In violation of the Due Process Clause Fifth Amend-ment. and the Due Process Clause under Equal Protection of the Four-

Amendment to the Federal Constitution and 42 U.S.C. §§ 1981, 1982 and 1983.

AS AND FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANTS BILL DE-BLASIO "MAYOR" JASON TURNER. "HRA" JO-ANN B. BARHART "SSI" ALPHONSO JACKSON "HUD" VICKI BREEN "HPD" GARY D. RODNEY "HDC" MARITZA SILVA FARRELL FOR AFFORDABLE HOUSING FOR ALL Co. JOHN/JANE DOE "DSS" RICK DAVIS, ANTHORNEY DOE FOR THE ROCKAWAY HOUSE THREE QUARTER HOUSE LLC, ET AL, ET SEQ.

150). Plaintiff allege and re-allege the allegations contained in ¶¶ 1-10,10-20,20-30,30-40,40-50,50-60,60-70,70-80,80-90, 90-100,100-110,110-120,120-130,130-140,140-150, 150-151. with the same force and effect as though set forth herein fully and at length.

151). Plaintiffs are adult citizens of the United States and the State/City of New York. during all times relevant Robert Jones was aresident of the Rockaway House LLC,"Three Quarter House" located at 494 Hendrix Street in the East New York section of Bklyn.

152). That on Information and belief Defendants Rick Davis Anthorney Doe of the Rockaway House LLC, Rubin Wolf Apartments and Linden Plaza "Michell-Lama" Housing Corporation with the City of New York

153). Are Corporations Licensed to do business in the State and City of New York , and are the Owners, Operaters and Management. of the Rockaway House LLC, Rubin Wolf Apartment Linden Plaza "Michell-Lama" Housing Corporation.

154). That upon information and belief, section # 2 of The Certificate of Incorporation for defendants Bill De-blasio "Mayor" Jason Tunrner "HRA", Alphonso Jackson "HUD", Vicki Breen "HPD", Gary D. Rodney "HDC", Maritza Silva Farrell for the Affordable Housing for All Corporation et al, States in pertinent part.:

155). The purpose for which this Corporation is formed are to Plan, Acquire, Construct, Own and Operate a State-aided Housing Project includede but not limted to Rockaway House LLC, Rubin Wolf Residence at 3629 White Plains Rd, Linden Plaza "Micell-Lama" 675 Lincoln Avenue, Affordable Housing for All 365 Bond Street. et al, et seq.

156). That upon information and belief Rubin Wolf Residence Corporation, Affordable Housing Corporation and Linden Plaza "Michell-Lama" Apartments were created and operated pursuant to the Limited Profit Housing Companies Law, known as the "Michell-Lama Act".

157). Defendants as held in ¶¶ 154-156. as a condition for receiving financial Benefits by incorporation under the limited Profit Housing Law, under contract with City of New York and State of New York Government have obtained law-interest Loans and other Financial benefit pursunat to the Michell-Lama Act §§ 10-37.

158). Private Housing Financial Law, and the continued Supervision and Regulation of said defendants as held in ¶¶ 154-157, while.. acting under State law as an agent, agencie or Department Constitutes State Government Action.

159). This Policy, Custom, and Usage has therefore resulted in numerous African Americans Homeless Applicants being denied equal opportunity by defendants in obtaining Housing and in being discriminated. againstsolely because of their Race, Color, and Economic Statute by defendants and each of them in violation of Due Process.

160). Clause of the Fifth Amendment and the Due Process and equal protection clause of the Fourteenth Amendment to the Federal Constitution and 42 U.S.C. §§ 1981, 1982 and 1983.

161). Plaintiff Robert Jones, Reginal Washington and other on behalf of plaintiffs have continually requested that they be assigned to vacant units in the Rubin Wolf Apartments/Residence, Linden Plaza "Michell-Lama"

162). Low-rent Housing projects named above, but not limited to those, each defendants has failed and refused to do so, Defendants Alphoso Jackson Secretary of Housing and Urban Developmen, Vicki Breen, Commissioner of Housing Preservation and Development "HPD" Gary D. Rodney President of Housing Development "HDC" et al, et seq.

163). Have acquiesced in the approved said Policy, Custom, and Usage of Segregation and have continually refused to require the other defendants to change said Policy, Custom and Usage.

164). Despite their inherent power to do so and have continued to give financial aid and other assistance to the other defendants. despite said segregation Policy, Usage, and Custom in violation of the Prohibitation to the Fifth Amendment to the United States Constitution.

AS AND FOR THE FOURTH CAUSE OF ACTION
AGAINST DEFENDANTS BILL-DE-BLASIO "MAYOR"
JASON TURNER "HRA" ALPHONSO JACKSON "HUD"
VICKI BREEN "HPD" GARY D. RODNEY "HDC"
MARITZA SILVA FARRELL FOR THE AFFORDABLE
FOR ALL HOUSING Co. RICK DAVIS ROCKAWAY
HOUSE LLC, ANTHORNEY DOE ROCKAWAY HOUSE LLC
ET AL, ET SEQ.

165). PLAINTIFF allege and re-allege the allegations contained in ¶¶ |1-10,10-20,20-30,30-40,40-50,50-60,60-70,70-80,80-90,90-100,100-110,110-120,120-130,130-140,140-150,150-160, 160-164, and 165. with the same force and effect as though set forth herein fully and at length.

166). Plaintiff prays this Court that upon the filing of this complaint as may appear proper and convenient to the court, the court advance this cause on the docket and order a speedy hearing of this action according to law, and that on said hearing:

167). This court enter a judgment or decree declaring that the Policy, custom, and usage of defendants and each of them and their successors in office in refusing to lease to qualified African American applicants certain units of any public low-rent.

168). Or other housing projects under the jurisdiction, management, and control of defendants, solely because of their Race, Color or Economic Statute such applicants, are in segregated tenament on the basis of race, color, or economic statute in violation of.

169). The constitution and laws of the united states constitution and 42 U.S.C.§§ 1981, 1982 AND 1983.

170). This court issue a permanent Injunctive Forever restraining and enjoining defendants, and each of them, their agents representatives, and successors in office, from denying to qualified African American applicants the right to lease any units in any of the public housing projects under their control, management, and suprevision. of defendants Bill De-blasio "Mayor" et al, et seq.

171), Because of Race, Color, or Economic statute, and from making any distinction whatsoever because of Race, Color, or Economic statute in the leasing of units in any public housing projects under their control, management and jurisdiction.

172). Plaintiff further seeks that this court give each of the plaintiffs Robert Jones, Reginal Washington and those similarly situated a judgment for $ 5,000.00 dollars in relocation costs and fees under Uniform Relocation Assistance and Real Property Act pursuant to title 42 U.S.C. §§ 4601.

173). Along with any and all other grants for which plaintiffs maybe entitled to as reasonable and within this courts power.

PRAYER FOR RELIEF

WHEREFORE: Plaintiffs seek both Injunction and Declaratory relief pursuant to title 28 U.S.C. §§ 2201 against all defendants both Jointly and Serverally as follows:

A). Compensatory damages against defendants Rick Davis and Anthorney Doe of the Rockaway House LLC, in the sum of $ 100,000. dollars both Jointly and Serverally.

B). Punitive damages against defendants Rick Davis and Anthorney Doe of the Rockaway House LLC, in the sum of $ 100,000. dollars both Jointly and Serverally, "Unlawfull Eviction and Lost Property"

C). Physical Pain and Sufferring against defendants Rick Davis and Anthorney Doe of the Rockaway House LLC, in the sum of $ 50,000. dollars both Jointly and Serverally, Unconstitutional. Long Term Exposure to Bed Bug Infestation, Black Mold, Sewage in the Bascment, Fire Safety Violation, Electic Codes Violation, et al. "494 Hendrix Street"

D). Mental and Emotional Anguish due to Bad Bug Infestation Bites, Swelling, Discomfort of the Hands, Face, Feet, Neck, Back, Shoulders, resulting with increase Post Traumatic Stree Disorder, Fear, Fright, Horror, Dread, Shock, and Shuddering with Terror, Slepp Deprivation and Greif.

E). Plaintiffs Robert Jones and Reginal Washington. seeks Immediate Housing with the City of New York, Affordable. Housing for Rent Newly Constructed units at 365 Bond Street, Bklyn New York and or Linden Plzaz Houses at 675 Lincoln Avenue also in the County of Kings "Mitchell Lama Housing" Under Low-income Rent Program "LIRP"

F). As contemplated by the United States Housing Act. 42 U.S.C. §§ 1401, pursuant to ¶¶ Amended Complaint 126-137. Under Public Access Housing Chapter 119 McKinney Vento Homeless Assistance Act, 42 U.S.C. §§ 11301-11389. and The Fair Housing Act

**§§ 3601-3608. et al, et seq.**

**G). Plaintiffs further seeks Assistance for all relevant Housing Programs and Services, Transitional Services, Rehabilitational and Mental Health Care, Substance Abuse Treatment, pursuant to Rehabilitation Act 29 U.S.C. §§ 504, 701, and 794.**



DAILY NEWS

# Homeless-hell landlord ripped

A BROOKLYN LANDLORD [illegible] of bilking the city by overcharging for apartments for the homeless [illegible] the units fall into deplorable conditions [illegible].

Barry [illegible], the owner of a [illegible] old apartment building [illegible] Ave. in Prospect-Lefferts Gardens, was slapped with a lawsuit last week [illegible] pel him to make much-needed repairs.

The Brooklyn Supreme Court suit brought by eight residents seeks to end his alleged harassment of 13 homeless and rent-stabilized tenants who remain in the building.

The money-hungry landlord has been violating rent stabilization laws and forcing residents to live in slum-like conditions, the plaintiffs said.

Some of the homeless are already being moved out, the city's Department of Homeless Services said.

According to the suit, [illegible] — who runs We Always Care Inc., a nonprofit that provides housing to the homeless — has been [illegible] in the building [illegible].

[illegible]

[illegible] social worker who raised four kids in her unit.

H). Americans with Disabilities Act "ADA" title 42 U.S.C. §§ 12101-12134, under Access to Housing as a reasonable. Accommodation. Programs Benefits and Services.

I). Plaintiff Robert Jones and Reginal-Washington et al,et seq. seeks Federal Auditor to investgate the Egreious and Dangerous Health and Safety Risk at the Rockaway Houes LLC. 494 Hendrix Street and 571 Glenmore Avenue locations.

J). Inclusive of ever Homeless Shelter in the City of New York, Vermin and Bed Bug Infestation, Toxic Black Mold. Urine Stained Mattersses, Electical Safety Code Violations, et al, et seq.

K). Plaintiffs Robert Jones, and Reginal Washington. Seek Financial Aid and Grant/Subsidies issued by Steve Banks, Commissioner of the Department of Homeless Services in the sum of $ 2,500.00 dollars a month to house both plaintiffs over the next Ten years.

L). Payment for the above maybe made directly to the Affordable for All Housing Projects 365 Bond Street, Bklyn New York location.

M). Reasonable Attorneys Fees and Cost pursuant. to County Law §§ 722 and Title 42 U.S.C. §§ 1988. also see Fed.R.civ.P. Rule 23 (h). Attorneys Fees and Cost Nontaxable.

Sworn to before me this 18th day of Feb 2016.

Respectfully Submitted

ERNEST O OMOROGBE
Notary Public- State of New York
No. 01OM6152449
Qualified In Nassau County
My Commission Expires September 11, 2018

Exhibit "A"





# Unstable homes

## 800 at risk in bid to shut shady biz's after-rehab sites

EXCLUSIVE

BY LAURA SANICOLA and STEPHEN REX BROWN
NEW YORK DAILY NEWS

ONE OF THE city's largest chains of transitional houses for addicts is on the verge of financial ruin, forcing the city to scramble for accommodations for as many as 800 down-and-out people.

An expert hired to analyze Narco Freedom – whose owners are facing a litany of criminal charges in state and federal courts – says 11 of 18 "Freedom Houses" in the network should be closed.

"The finances of this organization are designed to lose money," bankruptcy attorney Lori Lapin Jones wrote in a report filed in Manhattan Federal Court.

The Freedom Houses operated as publicly funded flophouses that required often-desperate applicants to enroll in outpatient programs, even after they were no longer addicts, in order to continue living there so the operators could receive the additional public funds, authorities said.

A breakdown of the network's money troubles hints at the daunting task facing officials.

Jones' analysis found that Narco Freedom operated at losses of more than $6 million in 2012 and $800,000 in 2013.

Narco as a whole now loses $1 million each month, and the $4.6 million it has on hand will run out by October, according to documents.

Jones is now trying to get $2.9 million in Medicaid funds released by the state to help keep Narco afloat in the short term. She also wants to suspend admitting new residents and fire some staff at the residences, which are known as three-quarter houses.

Judge John Koeltl approved her plan last week, and said no Freedom Houses can be closed without his say-so.

Residents at two of the Freedom Houses in the Bronx told the Daily News they knew little about the network's fragile state.

"I heard they've been digging from the bottom of the pot, so to speak, but nobody ever mentioned this place closing," said Edward Hunter, 27.

Many residents are on edge, said attorney Matthew Main, who is involved in the Three-Quarter House Project to help organize tenants of the homes.

"This could be a very chaotic and traumatic loss of housing," he said.

"As of yet, no one has provided the answer for where 800 people will go."

A survey of 461 of 1,200 residents revealed just how difficult it will be for the residents to find somewhere else to live.

The survey found 87% are unemployed, 62% have a mental illness and 55% have a physical disability. A whopping 89% said they had no other living options.

"They better not kick me out, because I did nothing wrong and I ain't going to no shelter," said one 25-year-old resident in the Bronx.

Jones is partnered with Samaritan Village, which offers substance abuse treatment and other services and is positioning itself to take over some of Narco's operations.

The owners of Narco, CEO Alan Brand and his son Jason Brand, face federal and state charges. They are accused of using the supposed nonprofit as a personal piggy bank – funding luxury cars and mansions on Long Island and in Boca Raton, Fla. – through an illegal Medicaid kickback scheme, among other charges.

Their lawyers did not respond to a request for comment.

Mayor de Blasio has allocated $5 million in next year's budget to tackle the loosely regulated industry of three-quarter houses.

A spokesman for the city Human Resources Administration said it was working with all parties to ensure "an orderly transition of the Freedom Houses to new providers."

The spokesman said the agency was "grateful ... any closing of the Narco Freedom Houses must be approved by the federal court."





Alan Brand (main photo) and son Jason (left) face federal and state charges related to alleged Medicaid fraud by their Narco Freedom firm. Bottom, a "Freedom House" run by the business in Queens.

### DARK DAYS FOR 'NARCO' EMPIRE

**11 of 18** Freedom Houses should be closed, expert says.

In 2012, Narco Freedom ran at losses of **$6M**; in 2013, losses were **$800,000**.

Narco Freedom now loses **$1M a month**.

Narco's funds of **$4.6M** will run out by October.



Exhibit "B"

DAILY NEWS NYDailyNews.com

# Fight homelessness with apts., $15 wage

New York is a great city and New Yorkers are a proud bunch.

Yet one has to question if they have a right to be proud when thousands of New Yorkers have to live in homeless shelters or sleep on the streets.

The great shame of the city is that homelessness is at its highest point since the Great Depression. A record 60,000 homeless New Yorkers, including more then 25,000 children, sleep in shelters each night. During the last fiscal year, one in 42 children slept in the homeless shelter system, including one of every 17 African-American children and one of every 34 Latino children.



ALBOR RUIZ

"These unprecedented levels of

Coalition for the Homeless are all part of the campaign, which was created to demand action from City Hall.

Concerned New Yorkers, organized by the campaign, held a protest last Thursday to demand the construction of 15,000 units of housing for homeless families, a $15-an-hour minimum wage and that the mayor earmark 10% of all units in his affordable housing plan for shelter residents.

"Mayor Koch built 15,000 real affordable housing units, and we think (Mayor) de Blasio should match those numbers," said Jennifer Flynn, executive director of VOCAL-NY.

Thursday's protest began with a

Rising housing costs and stagnant wages are at the heart of the homeless crisis, the campaign said.

A fact that leaves no doubt about the need to raise the minimum wage is that nearly one third of homeless families sleeping each night in shelters have a member who is employed. But the wages they're paid as security guards, fast-food workers, home health aides and in retail sales, for example, are so low they cannot afford steep New York City rents, said a report released by the campaign.

"The cost of housing continues to skyrocket," the report said. "A recent Census Bureau survey found that, since 2011 alone, median New York City apartment rents rose more than 3% faster than the rate of inflation,

# No 'shelter' from storm

BY GREG B. SMITH
NEW YORK DAILY NEWS

CITY CONTROLLER Scott Stringer defended his rejection of dozens of homeless shelter contracts Friday and blasted Mayor de Blasio's management of the facilities.

"I am not approving contracts that put families in rat- infested fire hazards that don't meet the standards. Bill de Blasio should not be asking me to," Stringer said, noting that in March the city Department of Investigation found "serious deficiencies" at 25 city-run shelters.

"It's fair to say that this administration has a problem with the details of government," Stringer added.

But First Deputy Mayor Anthony Shorris complained to the Daily News and The New York Times that Stringer was unnecessarily holding things up.

"Ensuring homeless families in need are housed and receive the services they need is our first and foremost priority, and we won't let any paperwork issues impede that," Shorris said.

He said the city has been "aggressively repairing shelters to ensure they're safe" and "consistently provided the controller's office the information and paperwork they request."

The shelter population peaked last December at 60,000, and has since dipped to 57,000. The mayor has come under fire for failure to address street homelessness and find safe shelters for families.

The city contracts with dozens of providers for shelter, and since assuming office Stringer – a fellow Democrat who has tangled with the mayor several times since taking office last year – has rejected 33 of these contracts.

Stringer told The News contracts were rejected because of serious problems, including 17 shelters with open code violations and 15 without certificates of occupancy.




City Controller Scott Stringer (r.) has refused to use sites such as Pan American Hotel (above) as homeless shelters because of code violations, which has irritated Mayor de Blasio.

## Rudy: They weren't really homeless

IT ALL DEPENDS on what you mean by "homeless."

Rudy Giuliani, defending his City Hall record in an ongoing spat with Mayor de Blasio, said Friday shelter residents don't count as homeless – a definition that would surprise the Department of Homeless Services.

The former mayor took issue with de Blasio's comment that homelessness rose 40% during the Giuliani administration – saying that actually the shelter population rose only 32%.

"Here's how ignorant Mayor de Blasio is ... people who are in shelters, I would like to inform the mayor, are not homeless," said Giuliani in an interview on "Good Day New York" before going to the 9/11 Memorial.

A spokeswoman for the mayor said name-calling on the 9/11 anniversary was "inappropriate" and declined further comment.

Homeless advocates were incensed. "Of course people in homeless shelters are homeless," said Jennifer Flynn of Vocal-NY.

**Jennifer Fermino**

# Housing high mark for Blaz

BY JENNIFER FERMINO
CITY HALL BUREAU CHIEF

HE'S BILL the Builder.

The de Blasio administration built or preserved 20,325 affordable-housing units during the past 12 months, a 25-year record.

The units include 8,483 new construction starts – the most since the city's Department of Housing Preservation and Development was established in 1978 – and 11,842 units that were saved from the wrecking ball, made habitable or kept at affordable levels, Mayor de Blasio said.

They will eventually house 50,000 people and go toward de Blasio's ambitious goal of building or preserving 200,000 units of affordable housing in the next 10 years.

The mayor said the new units were crucial because the No. 1 expense for most New Yorkers is housing.

"This is what we're doing to make sure that people can stay in the neighborhood they love, in the city they love, that they have helped to create and build. This is our commitment," he said.

The units created in the past 12 months were all begun in the last fiscal year, which ended June



ANGUS MORDANT

**Mayor de Blasio boasts in the Bronx on Monday of a 25-year record for most affordable housing units built or preserved.**

30. They include 1,247 units for formerly homeless people, 1,544 for seniors and 1,164 for very poor families.

About 3,000 of the new residences will go to extremely low to low-income families – defined as up to $38,850 for a family of four.

Maritza Silva-Farrell, a spokeswoman for Real Affordability for All, called the announcement "a premature victory lap."

She said the administration "should focus on achieving much deeper levels of real affordabi in housing, especially in nei borhoods that will be rezoned.

The units did not come chea

They were made possible b huge infusion of city funds $618 million – in the past months.

The last time the city crea close to this amount of affordal housing units in a year was 1989, during the Ed Koch adm istration.

Much of that housing sto was in the Bronx, then known a national symbol of urb blight.

# Make ex-big pay: commish

BY JOHN MARZULLI
NEW YORK DAILY NEWS

THE CITY HOUSING preservation and development commissioner is urging a Brooklyn judge to send a former top official of the agency to serious prison time – despite his cooperation with the feds – for pocketing $2.5 million in bribes and kickbacks from developers.

Wendell Walters (photo), the highest-ranking official in the Bloomberg administration to be arrested on corruption charges, is facing up to 17 years when he is sentenced Wednesday by Federal Judge Nina Gershon.



"He has breached, in the worst possible way, his duty to his co-workers, to his fellow New Yorkers, and to society itself. He has caused lasting damage to the reputation of an agency that has done great work to revitalize this city and to aid its most vulnerable citizens," Housing Preservation and Development Commissioner Vicki Breen wrote the judge, urging her to sentence him to close to the max. "We should show zero tolerance for such misdeeds."

Federal prosecutors have also written the judge, suggesting Walters, who pleaded guilty in 2012, get less than the low end of the sentencing guidelines recommendation of 14 years in prison because of his cooperation against other defendants.

Walters, a former deputy commissioner at the agency, blames his stunning downfall on chasing the dream of owning a townhouse on Strivers Row in Harlem. He is seeking a sentence of community service.

# Court rips NYPD spying, lets Muslims sue

THE NYPD'S surveillance of Muslim communities in New Jersey evokes memories of Japanese internment camps and spying on protesters during the civil rights movement, an appeals court ruled Tuesday, reversing a lower court's decision.

The ruling by the 3rd Circuit U.S. Court of Appeals in Philadelphia revives a suit brought by Muslim worshipers against the city for the now-disbanded NYPD unit that spied on mosques and other sites without suspicion of criminal activity.

"What occurs here in one guise is not new. We have been down similar roads before. Jewish Americans during the Red Scare, African-Americans during the civil rights movement, and Japanese-Americans during World War II are examples that readily spring to mind," Judge Thomas Ambro wrote.

A Law Department spokesman said the city is reviewing the decision.

"Stigmatizing a group based on its religion is contrary to our values," he said.

**Stephen Rex Brown**
**With Rocco Parascandola**

Council Member **Ritchie Torres**
State Senator **Gustavo Rivera**
Assembly Member **Victor Pichardo**
invite you to attend

**FREE** Citizenship Application Assistance

Saturday, October 17, 11 am-2 pm

To RSVP, please call 646-664-9400
ONLY FIRST 130 WILL BE SERVED

# Affordable Housing for Rent

RUBIN WOLF RESIDENCES

61 NEWLY CONSTRUCTED UNITS at 3629 WHITE PLAINS RD, BRONX, NY

**Amenities:** On-site resident manager, laundry facilities, recreation room, recreation terrace with children's play area, parking† (†additional fees apply).

**Transit:** 2/5 Bx39, BxM11, Bx28, Bx30, Bx38, Bx41

**No application fee. No broker's fee. Smoke-free building.**

**Who Should Apply?** Individuals or households who meet the income and household size requirements listed in the table below may apply. Qualified applicants will be required to meet additional selection criteria. Applicants who live in New York City receive a general preference for apartments.

- 5% of units set aside for mobility-impaired applicants
- 2% of units set aside for applicants with visual or hearing impairments

Preference for a percentage of units goes to:

- Residents of **Bronx CB 12** (50%)
- Municipal employees (5%)

1. View the Available Units... → 2. See Unit Requirements...

| Unit Size | Monthly Rent* | Units Available | | Household Size** | Annual Household Earning*** |
|---|---|---|---|---|---|
| Studio | $791 | 15 | → | 1 person | $28,492 - $36,300 |
| 1 bedroom | $850 | 12 | → | 1 person | $30,549 - $36,300 |
| | | | | 2 people | $30,549 - $40,800 |
| 2 bedroom | $1,026 | 34 | → | 2 people | $36,618 - $41,460 |
| | | | | 3 people | $36,618 - $46,620 |
| | | | | 4 people | $36,618 - $49,248 |

** Household size includes everyone who will live with you, including parents and children. Subject to occupancy criteria.

* Rent includes gas for cooking, gas heat and hot water.

*** Household earnings includes salary, hourly wages, tips, Social Security, child support, and other income for household members. Income guidelines subject to change.

## How Do You Apply?

Apply online or through mail. To apply online, please go to: **www.nyc.gov/housingconnect**. To request an application by mail, send a self-addressed envelope to: **Rubin Wolf Residences, P.O. BOX 20181, FLORAL PARK, NY 11002**. Only send one application per development. Do not submit duplicate applications. Do not apply online and also send in a paper application. Applicants who submit more than one application may be disqualified.

## What is the Deadline?

Applications must be postmarked or submitted online no later than **November 30, 2015**. Late applications will not be considered.

## What Happens After You Submit an Application?

After the deadline, applications are selected for review through a lottery process. If yours is selected and you appear to qualify, you will be invited to an interview to continue the process of determining your eligibility. Interviews are usually scheduled from 2 to 10 months after the application deadline. You will be asked to bring documents that verify your household size, identity of members of your household, and your household income.

**Español** Para recibir una traducción de este anuncio y la aplicación en español, envíe un sobre con su dirección a **Rubin Wolf Residences, P.O. BOX 20181, FLORAL PARK, NY 11002**. En la parte posterior del sobre, escribir en inglés la palabra "SPANISH". Las solicitudes llenas deben enviarse por correo a más tardar el **30 de noviembre 2015**.

**简体中文** 若要获取此广告和申请表的中文翻译，请将回邮信封发送到：**Rubin Wolf Residence, P.O. BOX 20181, FLORAL PARK, NY 11002**。请在信封的背面书写英文单词 "CHINESE"。填写好的申请表必须在 **2015 年 11 月 30 日**，当天或之前加盖邮戳。

**한국어** 이 광고문과 신청서에 대한 한국어 번역본을 받아보시려면 반송용 봉투를 **Rubin Wolf Residence, P.O. BOX 20181, FLORAL PARK, NY 11002** (으)로 보내주십시오. 봉투 뒷면에 "KOREAN"이라고 영어로 적어주십시오. 작성된 신청서에는 늦어도 **2015 년 11 월 30** 일까지의 날짜 소인이 찍혀 있어야 합니다.

**Kreyol Ayisyen** Pou resevwa yon tradiksyon reklam sa a ak aplikasyon an nan lang, voye anvlòp ki gen adrès pou retounen li a nan **Rubin Wolf Residence, P.O. BOX 20181, FLORAL PARK, NY 11002**. Dèyè anvlòp la, ekri mo, "HAITIAN CREOLE" nan lang Anglè. Ou dwe tenbre aplikasyon ou ranpli yo anvan dat **novanm 30, 2015**.

**Русский** Для получения данного объявления и заявления на русском языке отправьте конверт с обратным адресом по адресу: **Rubin Wolf Residence, P.O. BOX 20181, FLORAL PARK, NY 11002**. На задней стороне конверта напишите слово "RUSSIAN" на английском языке. Заполненные заявления должны быть отправлены по почте не позднее **30 ноябрь 2015**.

Mayor Bill de Blasio
HPD Commissioner Vicki Been
HDC President Gary D. Rodney
www.nyc.gov/housingconnect

# LINDEN PLAZA

675 LINCOLN AVENUE, BROOKLYN, NY
MITCHELL-LAMA RENTAL/LOW INCOME
HOUSING TAX CREDIT

RENTAL: THREE BEDROOM RENOVATED APARTMENT
WAITING LISTS OPEN

| APARTMENT SIZE | HOUSEHOLD SIZE | MONTHLY RENT | TOTAL ANNUAL INCOME RANGE MINIMUM - MAXIMUM |
|---|---|---|---|
| 3 BEDROOM | 5 | $1491-$1565 | $40,410-$74,600 |
| | 6 | $1491-$1565 | $40,410-$80,100 |
| | 7 | $1491-$1565 | $40,410-$85,650 |
| | 8 | $1491-$1565 | $40,410-$91,150 |

*RENTS MAY VARY BY INCOME AND SUBJECT TO CHANGE

**OCCUPANCY STANDARDS:**

THREE BEDROOM: NO FEWER THAN (A) FIVE PERSONS, (B) PARENT(S) OR GUARDIAN(S) WITH TWO CHILDREN OF THE OPPOSITE SEX, (C) A HOUSEHOLD OF THREE ADULTS WITH ONE CHILD WHERE AT LEAST ONE ADULT IS THE PARENT OR GUARDIAN OF SUCH CHILD, OR (D) A HOUSEHOLD OF ONE PARENT OR GUARDIAN AND HIS OR HER THREE CHILDREN

**IMPORTANT NOTICE:**

- PREFERENCE WILL BE GIVEN TO DOCUMENTED VETERANS.
- APPLICANTS MUST BE 18 YEARS OF AGE OR OLDER.
- APPLICANTS MUST BE FINANCIALLY RESPONSIBLE.
- APPLICANT MUST MEET ALL ELIGIBILITY REQUIREMENTS.

TO OBTAIN AN APPLICATION, INTERESTED PARTIES
CAN CALL (718) 235-7600,
EMAIL AT **LINDEN.APP@GMAIL.COM**
OR MAIL A SELF-ADDRESSED, STAMPED ENVELOPE
TO THE FOLLOWING ADDRESS:

LINDEN PLAZA PRESERVATION
675 LINCOLN AVENUE, BROOKLYN, NY 11208

SUPERVISED BY THE FOLLOWING AGENCIES:
THE NYC DEPARTMENT OF HOUSING
PRESERVATION & DEVELOPMENT, NYC HOUSING DEVELOPMENT
CORPORATION, AND U.S. DEPARTMENT OF
HOUSING & URBAN DEVELOPMENT

**BILL De BLASIO, MAYOR**
**VICKI BEEN, HPD COMMISSIONER**
**GARY D. RODNEY, HDC PRESIDENT**

NYC Department of Housing Preservation & Development

EQUAL HOUSING OPPORTUNITY

NYC HDC NEW YORK CITY HOUSING DEVELOPMENT CORPORATION

# FLATLY LOUSY

## Nabes can't afford apt. plan

East Harlem on Monday night joined the growing citywide revolt against Mayor de Blasio's affordable housing plan.

That neighborhood's Community Board 11 voted to reject two centerpieces of de Blasio's proposal. They shot down a requirement that 25% of apartments in all new private rental developments be affordable units. And they gave a thumbs down to zoning changes that would permit construction of taller buildings by developers who agree to produce more affordable units.



JUAN GONZALEZ

El Barrio's Community Board 11 thus joined dozens from East New York in Brooklyn to every corner of the Bronx and Queens who have soundly rebuffed the mayor's plan in recent weeks.

It is "affordable" in name only, the community critics say.

As currently structured, they say, the plan will fuel higher rents in the city's poorest neighborhoods and speed up the displacement of long-term tenants – the very trends de Blasio says he wants to prevent.

The mayor, though, is vigorously defending his approach.

"We still have to attract development to the city," he told the Daily News. "If we don't create a viable financial offer, then they will just walk away."

His plan, de Blasio said, gives the city the tools "to lean even heavier (on developers) to have more low-income housing."

But veteran housing advocates see City Hall's definition of affordable rent as too high for most residents of the neighborhoods being targeted.

"We are against the mayor's luxury housing plan because it favors large companies and rich landlords," said Maria Mercado, of Movement for Justice in El Barrio, a tenant group whose members packed Monday's meeting.

De Blasio's overall goal of preserving or building 200,000 units of affordable housing is quite laudable.

"We have got to build affordable housing on a massive scale," he said. "We stopped doing that in the 1970s after Co-op City and after Starrett City."

So why isn't the mayor listening to the man who spearheaded those developments, the man who conceived and ran the most successful public housing project of them all – Battery Park City?

His name is Charles Urstadt.

For several years now, Urstadt, a longtime Republican, has been telling politicians of both parties that the Battery Park City Authority is a gold mine right under the nose of City Hall.

Every year, the authority produces more than $130 million in surplus.

That money was originally earmarked to subsidize low- and moderate-income housing, but since Albany controls the appointments to Battery Park City's board of directors, the state has at times raided the surplus to fill its budget gaps.

"What they're doing is tapping the honey pot," Urstadt said.

But ever since 1983, the city has had the power to take control of the land under Battery Park for a mere $1.

By doing so, the city could use the annual revenue stream to fund up to $3 billion in bonds, Urstadt says, and all of it could be used for the original goal – building low-income housing.

"We've had 25 years of bad public policy on this issue," Urstadt says.

With the city's population exploding, and private developers refusing to build low-rent housing unless they get big government subsidies, you need bold housing plans for the city's working and middle classes.

De Blasio's plan, though well-intentioned, is not enough.

That's what neighborhood leaders are saying. That's what housing experts like Urstadt say.

Change your plan, Mr. Mayor, or risk the ire of the very people you say you're defending.

jgonzalez@nydailynews.com



**City could take pointers from Charles Urstadt (inset), whose Battery Park City Authority is a gold mine.**

DAILY NEWS NYDailyNews.com

# In NYC, a high-stakes homeless showdown

**BE OUR GUEST**

BY ARVIND DILAWAR

Two groups dedicated to the homeless face off in court this week, in a fight that shows how far the city has to go to get a real handle on a homeless population that's the largest it's been since the Great Depression.

The Doe Fund, a nonprofit organization dedicated to assisting the homeless, is suing New York City's Department of Homeless Services to stop the city from forcibly transferring 50 sex offenders to its shelter in East Williamsburg.

It's a high-stakes fight – the Doe Fund says it will shut down the facility if it loses in court – that shows how far New York City has to go in developing programs that really integrate rehabilitated sex offenders back into society, instead of just warehousing them until the next inevitable tragedy puts the issue in painful relief once more.

The faceoff dates back to April, when a convicted sex offender at a Kips Bay shelter was arrested on new sexual assault charges; less than two weeks later, a former Wakefield shelter resident was charged with the murder and attempted rape of that facility's director. DHS' response to these tragedies, and the intense local criticism and media scrutiny that accompanied them, has been to reas-

**Don't leave them in limbo**

sign sex offenders to new facilities.

But state law dictates sex offenders on parole or probation who have victimized children or are at high risk for reoffending must live more than 1,000 feet from schools, playgrounds and other areas where children congregate, which eliminates much of the city's housing. The Doe Fund's Peter Jay Sharp Center for Opportunity is one of just 17 facilities in New York that meet those criteria.

Still, moving homeless sex offenders there is a terrible idea, which is why the Doe Fund is suing the city. Not only is it unfair to East Williamsburg – already home to more sex offenders than most New [Y]ork neighborhoods – but it also [r]obs countless other homeless people of the opportunities they need most: the chance to obtain gainful employment, to find their own homes and to rebuild their lives.

Founded in 1985, the Doe Fund has assisted 22,000 homeless people since its inception. Its flagship program, Ready, Willing & Able, provides homeless men with nine to 12 months of hous-

training. Program members progress from working in their shelters to cleaning streets as part of "Men in Blue" crews to becoming professionally licensed in one of six careers, such as commercial driving, culinary arts and building maintenance. The final step is obtaining full-time employment and unsubsidized housing.

Because the Men in Blue crews clean 170 miles of New York City sidewalks each day – bringing them into proximity with schools, parks and playgrounds – residency restricted sex offenders can't work on them. So housing 50 sex offenders at the Sharp Center would mean ejecting the same number of Ready, Willing & Able members who are midway through the program. And it would leave the sex offenders there in limbo – with no program to join, no plan for getting them out of the shelter and into their own homes.

So while moving the sex offenders into the Sharp Center is a way for the city to show it's doing something, it only exacerbates the problem that got us here in the first place: not having a real plan to accommodate the growing number of homeless in New York City

and, perhaps more importantly, to help them move from the shelter system into permanent housing.

There is another option: With Ready, Willing & Able, the Doe Fund has demonstrated that programming fitted to the particular needs of specific segments of the homeless population – in this case, men, most of whom have previously been incarcerated – can help end the cycle of homelessness. It took 25 years and support from government and private donors, but the Doe Fund today can boast that the majority of men who enter Ready, Willing & Able find full-time work and unsubsidized housing, while reducing their recidivism rates by 60%.

Could a similarly concentrated, committed approach to assisting sex offenders be as successful?

We won't know if the city continues to ignore the problem of homelessness among sex offenders until it makes the front page, then offers half-baked measures to show it's handling the problem.

*Dilawar is a journalist based in*

Robert Jo
#141502461
Otis Bantum Correctional Center
1600 Hazen Street
East Elmhurst N.Y. 11370.

U.S. POSTAGE PITNEY BOWES
ZIP 11370 $ 002.52⁰
02 1W
0001390116 FEB 29 2016

Pro-Se Clerk's office
United States District Court
Eastern District of New York
225 Cadman Plaza
BKlyn New York
11201.

USMS

Legal Mail

Docial